Good morning, Your Honors, and may it please the Court, my name is Jeremy Tedesco and I represent the appellants in this matter. I'd like to reserve three minutes for rebuttal. Your Honors, in its prior ruling in this case, this Court said, and I'm quoting, Gilbert has adopted a sign ordinance that makes one's head spin to figure out the bounds of its restrictions and exemptions. That's exactly right, and the reason is that the Code is littered with layers of content-based restrictions, requirements, and provisions. In fact, Your Honors, all you have to do to find the content-based discrimination within the Code is turn to pages 2 to 3 of the Code. If you go to the addendum to our opening brief and open up to pages 2 and 3, what you'll see is that the Code bans all signs without a permit, but then grants over 20 exemptions from that permit requirement. This is clearly content-based discrimination under this Court's precedent. If you look at desert outdoor advertising, there was a locational restriction on noncommercial signs there. But then the Code went on and granted four exemptions to certain sign types from that requirement. This Court said those exemptions rendered the Code content-based. Well, let me ask you this. Because this case has already been here and then went back, do you agree so we have to talk about what might be law of the case. Do you agree that in light of the Ninth Circuit's opinion in Reed v. Town of Gilbert, which was the 2009 Ninth Circuit case, our review is limited to whether the sign code impermissibly discriminates among certain forms of noncommercial speech? Well, I think that's the critical point in the remand. But the Court also noted in its remand, and I'm quoting from it here, not only Well, but there are certain things it decided that we have to, that you don't get to relitigate here. So that's what I'm asking you. Is that why we're here? Well, that's the main question why we're here. But as far as the exemptions, the exemptions from the permit requirement, the Court didn't render a ruling on that and actually highlighted in its section dealing with the noncommercial the discrimination among noncommercial signs, several cases from this Court and other courts that held that those kind of content-based exemptions from general requirements or restrictions are content-based. It specifically highlighted national advertising v. City of Orange. And in that case, it was a ban on off-site signs. And yet there were over 10 exemptions from that requirement. And Gilbert is doing the exact same thing here. They have a permit requirement. They grant over 20 exemptions to that requirement. And many of those exemptions are very similar to the exemptions, content-based exemptions, in desert outdoor advertising and in national advertising v. City of Orange that ultimately doomed those things. Isn't the distinction, though, that in those other cases we're talking about a total ban on the so-called disfavored forms of speech? In desert outdoor advertising, it wasn't a total ban. It was a locational restriction. So noncommercial signs were limited to three zoning districts generally. But then the exemption allowed noncommercial signs to be placed in all zoning districts. So noncommercial signs weren't completely banned. They were just limited to three unless you fell into the favored category. So you're not my understanding is you're not you've never asserted that the sign should be exempt from the permit requirement because they're ideological signs. Is that correct? You're not claiming that here. That they're not ideological signs? You're not claiming that here, that they should be exempt because they're an ideological sign. That's not your claim here, is it? Well, the question of what kind of sign this is just kind of points out the problem with the code. What the code does is it Well, but I'm trying to but, you know, we have to, you know, cases come up here with certain issues. And, you know, we had this before. So I'm trying to say, you know, what was law of the case? What's before us here? And I'm not going to wander all over the place if it's not I don't see that that's a you're not claiming that it's exempt from the permit requirement because they're ideological signs. The claim in relation to the ideological signs is No, what's your Are you claiming that here? That our signs are ideological? Is that the claim in this case that they're exempt because they're ideological? That's not your claim in this case, is it? No. The primary issue before the Court is whether the distinctions the code makes among noncommercial signs, which includes the ideological provision, the political sign provision, and the qualifying event sign provision, is content-based. And it clearly is. But it would appear to me, though, that you have you're saying your sign here is a temporary directional sign. Well, the town says that it is, Your Honor. The point is that all signs The judge is asking what you say it is. I think our sign contains a religious message and certainly could fall under the ideological sign provision. I think that points out the problem. What this town has done is it regulates temporary signs differently. See, what the town could do is if you turn to page 25 of the addendum to our opening brief, you'll see that this code defines temporary signs in this way. They say it is a sign not permanently attached to the ground, a wall or a building, and not designed or intended for permanent display. Now, if what the town did was impose the same size, location, duration, and other requirements on all signs that fell within that category, that would likely be constitutional. But instead of doing that, what the town does is it breaks those temporary signs into content-based classifications, the very ones that this Court pointed out in its remand, ideological signs, political signs, qualifying event signs. They're all temporary signs. But they all get vastly different treatment under the code. And that's the content-based discrimination. Kagan. Well, that's what I'm seeing that the focus of your argument is, that yours falls into the temporary directional sign exemption, but you're saying that we have to compare and contrast it to other exemptions and that a city can't create different exemptions for different types of noncommercial speech. That's what I'm understanding you to say. That's correct, Your Honor. The reason I open with the content-based exemptions is because I want to point out to the Court that the whole code is content-based. You can see it at many multiple different layers. So here, the layer is, how do they regulate temporary signs under the code? And what the town can do is they can lump signs into different categories, sign types. Well, may a city create different exemptions for different types of noncommercial speech, or do you say they can't do that either? Well, what they can't do is what they're doing here, which is to lump. See, you can regulate based on sign types. So if the town wants to treat billboard signs different than wall signs, different than window signs, and ultimately different than temporary signs, that's okay. But as far as the signs that fall within those sign types, the town has to treat all the signs that fall within those sign types the same. And that's the critical problem here. As I said, all the temporary signs on the code are treated vastly different. Ideological signs, political signs, qualifying event signs get different treatment. If you look at page 4 to our reply brief, we have a visual depiction of the size differentiation. And you can see how qualifying event signs are very narrowly regulated. Six square feet is all they get in sign area. Ideological signs get up to 20 square feet. Political signs can be up to 32 square feet. I would say, counsel, that if we accept your argument, basically there can be one category of signs, there has to be a uniform regulation for all of them? Well, for all temporary signs, yes. But it doesn't have to be one category of signs. As I said, if they wanted to split out billboard signs and treat them differently, that's fine. And they do that. Wall signs, that's okay. And they do that. Window signs, treat them differently. They can do that. But within the category of temporary signs, they can't make the kind of content-based distinctions that they're making. And, again, this Court's question ---- So what best supports your contention that the sign code is a content-based restriction subject to strict scrutiny? What case best supports your position? Well, desert outdoor advertising certainly does because that was a case that dealt with a locational restriction that impacted noncommercial signs differently. Most noncommercial signs under desert outdoor advertising were limited to three zoning districts. But then there were some noncommercial signs that were exempted from that location requirement and could be placed in every zoning district in the town. So that differential treatment among noncommercial signs as it related to location was unconstitutional in desert outdoor advertising. The Winton case of the Eighth Circuit is also a very good case that supports our position. There was a durational requirement that was imposed on political signs. There were 30 days for political signs, and that was it. But the Code allowed other similar noncommercial temporary signs to be placed for far periods longer ---- far longer periods of time. And what the Court said there was that differential treatment of noncommercial signs as it related to the duration requirements violated the First Amendment. And that's what the town is doing here. Size, duration, location, number of temporary signs is all different depending on what content-based category your temporary sign falls within. But I assume you would say even within the category of temporary signs that if the city could identify some noncommunicative aspect of a particular type of temporary sign that aggravated the safety and aesthetics concerns that they've raised, that that would be permissible if they could identify some difference, right? On that point? No evidence in the record of that would support any kind of differentiation. And I think the most important thing is they give some of the most favorable treatment under the Code to political signs, even though political signs, any court that's looked at it, has said they're the worst offenders when it comes to temporary signs of the very interests asserted here, aesthetics and safety. And so what the town has done is flip their interests on their head. The signs that are going to be imposing the most problems for them from safety and aesthetics get the best treatment under the Code, where other noncommercial signs are severely restricted. And so I think it's also important to raise GK limits. Well, but there's difference in things like a political sign. For example, the election, there's more time leading up to it when people are deciding how they want to vote. And then right after the election, then they have to get out and take them all down. And your directional signs, you know, my understanding is that you would be announcing an event that would take place at a particular time, and after that the event would be over. Well, political signs relate to events, too. It's a one-day event. It's an election. But since you're not complaining, since you're not contending that it's an ideological sign, it's really to give enough advertisement to come to the particular event and where it is. Yeah, but an election is a one-day event, and they get 60 days before and 15 days after. The church, for their particular event, gets 12 hours before and one hour after. But you're deciding whether you're going to go there. You're not deciding who you're going to vote for. But still, the proper comparison when you're dealing with these kind of noncommercial signs that fit under this temporary sign type is event to event. And I think G.K. Limited is very important here because in G.K. Limited. Well, what if suppose the city had only one exemption from its permit requirement, and that exemption was the exemption for temporary directional signs? Do you think that ordinance would be constitutional? Well, then they'd be treating temporary directional signs better than other noncommercial signs that required a permit. So, no, I think that would be content-based discrimination. I think it's important, too. I just wanted to address G.K. Limited very quickly and explain why this case is nothing like it. In G.K. Limited, there was an event that triggered an opportunity to put up signs, and that was an election. So when an election occurred, you could put up a sign regarding any subject matter you wanted, which is the critical distinction here. In G.K. Limited, any sign you wanted on any subject whatsoever could be put up when an election occurred. And it had the exact same duration and size requirements as every other allowed temporary sign. I'll just stop you there. But you wouldn't say that if the city here amended its ordinance to say that there will only be signs allowed, only temporary signs will be allowed 30 days before an election, and you have to take them down the day after the election. You wouldn't be saying, oh, yeah, that's constitutional as applied to us, would you? Well, they have to treat all the signs that fall within that temporary sign category the same. So they can regulate size. They would be in my hypothetical, right? Well, I don't think the town is going to do that. They've already allowed 60 days before and 15 days after an election, and ideological signs have no time restriction whatsoever. And so, you know, they have allowed signs to be placed for much, much longer periods of time than just a couple days. And in G.K. Limited, it was 90 days and 15. I think it was 90 and 5 days afterwards. But I'm saying if the city adopted the kind of ordinance that was upheld in G.K. Limited, I assume you'd be right back here. Well, I don't think the church would want the limitations in G.K. Limited, but this critical distinction is that in G.K. Limited, it was a content-neutral regulation. Everyone could put up a sign subjected to the exact same duration and size requirements. And in Gilbert, when an election occurs, it gives you the opportunity to put up a sign only bearing political messages. I understand. But just tell me, what's the constitutional defect if they do treat all temporary signs the same and they just impose that? G.K. Limited? They impose the same kind of content-neutral? There was no defect in G.K. Limited. No, no. I'm saying if the city were to amend its ordinance here to adopt something similar to G.K. Limited, what would be the constitutional defect from your client's standpoint? Well, again, I don't think there would be a defect so long as they were treating all temporary signs the same. In G.K. Limited, it was a regulation of temporary signs. Even if that meant you could only advertise for your church's services 30 days before an election, you would just live with that? Well, I certainly don't want the town to make that kind of an amendment. And like I said, I don't think it's very likely because of the way they already regulate signs. But I guess what I'm saying, though, is that it seems to me if we accept your argument, that is what you're going to force the city to do, essentially. No. What we're forcing the city to do is to treat all temporary signs the same. And so that's their duty under the Constitution. They have a lot of authority to regulate those temporary signs the way they want to. And there's a lot of interest at play. Political signs, obviously the political, the politicians want to be able to have their signs up as much as possible. And the town seems like they're willing to do that. So they have to create a level playing field for everybody who wants to put up temporary signs. Can I ask you? I see your time's running. One question just on remedy. If we were to accept your argument, what is the remedy here? Do we just basically excise subdivision P from the code and that's it? Or is there some more? Well, I think what the Court should do is say that the way that the manner in which the code regulates temporary signs is content-based. And that's what it needs to rectify. And it could direct the district court to enter an injunction in that manner. Thank you. Good morning. Good morning. May it please the Court? My name is Kim Alvarado. I notice you have someone at counsel table also. Will you be making all the argument? I will. Okay, thank you. My name is Kim Alvarado. And this is my partner, Jenny Winkler. And we represent the town of Gilbert in this matter for the second time. To clarify. I tried to narrow on appellant based on that this has been here before. And I'm not sure that we sort of successfully had a meeting of the minds. From your perspective, why are we here? We should only be here on the limited issue that was remanded by this Court the first time. And the plaintiffs have been doing their best to relitigate all the issues that this Court has already rejected. It's correct that where a court enters a preliminary injunction, the law of the case applies to what's decided at the preliminary injunction until there's a final judgment. But the general rule, is it not, is that where the case moves to final judgment and the issue becomes a permanent injunction, for a variety of reasons connected with how preliminary injunctions are litigated, the law of the case ceases to bind anybody. And all of the issues are up for grabs. Is it not correct that in this case, on remand, the possibility of limiting further proceedings temporarily to the specific matter remanded was considered and rejected, and the parties agreed to dispose of the entire case by cross motions for summary judgment? In terms of procedure, You're correct, Your Honor, that we did agree, that the plaintiffs agreed not to continue with a preliminary injunction hearing, and that we just initiated discovery and moved to the summary judgment posture. So when and there, in fact, is a final judgment in this case, is there not? There is. So once there's a final judgment, are not all issues open for further consideration? Well, I think the Court's rulings on each issue would be open to consideration. But in this case, it's unique because we have a published Ninth Circuit decision that was analyzing the law. It wasn't just analyzing, you know, different facts. It was saying, is this party likely to prevail on the law? And issued a lengthy and well-reasoned opinion deciding the law. And there was a reason they published it. They wanted to set what the precedent was in the Ninth Circuit. So what is law of the case that carries over to this? This ordinance is not content-based. It's distinguishing of the Fody v. City of Menlo Park case and why that analysis does not apply in this to this ordinance. That is law of the case. And that law has been cited by many district courts and the Ninth Circuit as recently as last year. No. I mean, what you're saying, even though it was in a preliminary injunction case, they had to look at the statute and say whether it was content-based or not. Right. Because that was the first issue that was presented about whether what level of scrutiny is going to apply. And that has already been decided in this case. And the reason they published the decision, obviously, is because they wanted to get to educate a lot of people out there in the circuit about content-based does not mean subject matter. That's what the plaintiffs are arguing. They're saying as soon as you say political signs, content-based, you lose. As soon as you say religious signs, which is, of course, what they argued their signs were through this entire proceeding, well, you just defined the subject matter. Now it's content-based. Why is that wrong? Well, obviously, this Court already rejected that argument and said it's wrong. And the Court, though, was doing the comparison that the district court was asked to do on remand. Right. If you look at almost every case, well, obviously, Supreme Court cases as well as this Court, they are decided based on the facts that are in front of them. And we have a huge body of law on political signs and political speech. And the case, one of the cases they're referring to is this Baldwin case from the Ninth Circuit in 1967. That was political signs next to the street. And the Court, this Court said you have to let them be there. Why? Because political speech is on the first rung of the First Amendment ladder. It's entitled to the most protection. Now what the plaintiffs are doing is coming in and going, me too, but I have a different kind of sign. And I just want to take nice, you know, excerpts and quotes from these cases that talk about, that define subject matters. In those cases that talk about political speech, I know several judges on here, you have analyzed cases on political speech. You've done one on religious speech. You, in those cases, talked about subject matters and said that's not a content-based restriction. I'm sorry. I read Metro Media as saying that you have the burden of showing that there's some noncommunicative aspect of these different sign types that justifies differential treatment. I, I, your opponent says that you've got no evidence in the record to show that there is some difference in terms of the way they have these signs, these different signs affect safety and aesthetics. And can you point us to something that? Well, I don't think, first of all, it's kind of the idea of, well, if one sign creates a piece of litter there, we should, or we should allow a million pieces of litter. I mean, certainly there's case law that says the city who is trying to balance their interests can, can try to even out the type of signs, the duration, the number, so that it's not, you know, littered to a certain extent. But you can't do that, though, by saying we like political signs better than religious signs, can you? Well, first of all, I mean, obviously the town's never said we like political signs. This Court has required them to put political signs on the top rung of the First Amendment ladder, as well as, of course, now there's a State statute that was passed last year that requires that as well. So that's part of the issue here. It's not that these towns are out there saying, hey, we want to, like, put signs out there. It's that the courts are, every time there's a challenge to usually one type of speech, which is usually either political speech or billboards, that creates new law. The towns have to react to that law. And now you have someone else coming in and saying, oh, well, whether it's religious speech or whatever topic, whatever subject matter they have, I want to be treated the same as political speech, even though those cases were about political speech. And if you look at the Snyder case from last summer from the U.S. Supreme Court, they actually talked about matters of public concern and matters of private concern. And that was actually a picketing case. But that was, they went through and said if it's a matter of public concern, that gets the highest level of protection. Matters of private concern, not saying you can't talk about them, not saying they're not valid. But when you're talking about self-expression and self-promotion, that isn't going to be afforded the highest level of first member protection that political speech does. So you can't say in this case that because there's all these precedents that were specific to political speech and now say you can come in and say, well, I want to do exactly the same thing they're doing. Also, keep in mind, we have to have time, place and manner restrictions. And even he said, well, these are temporary signs. Well, if it's temporary, there's a temporal component to it, right? There has to be, you know, a starting point and an ending point. By definition, how does it, how does any town make a reasonable time, place and manner regulation that's going to pass constitutional muster if they don't look at the event or the function of that sign? If we do the one-size-fits-all, which is what you were, the hypothetical you gave to counsel, we're going to get another lawsuit saying it's overbroad and under-inclusive at the same time because, look, I want to advertise once a week my church service and you're saying I can only put up signs during election season. You have to look at the function of the sign, the event of the sign, in order to figure out if it's a reasonable time, place and manner restriction. It's a circular argument. Can you address the two cases that counsel highlighted, this Desert Outdoor case and the Witten case from the Eighth Circuit? They seem to be most closely on point in terms of the cases they cited. How do you distinguish those two? Right. Well, they did involve total bans of speech, and then with exemptions. This is not a ban of speech at all. This is, I mean, the irony of this entire case has been this was something that the town of Gilbert was doing, that they were actually trying to afford a benefit to these nonprofit organizations that the barbershop and the shoe store don't get to do. This is off-site signage, which is a key issue. And then, of course, the other distinction we're talking about here is when it comes to the public rights of way, I think the Court does have to do a forum analysis which is a lot of those cases, those are billboard cases, and those are not, there's no forum analysis at issue in those cases. Again, the Ninth Circuit is not. What case authority do you have for the proposition that rights of way are not a traditional part of a traditional public forum? Well, we have several. We cited them in the case, the Coquinda case is one of them. That dealt, because again, it's not that, we're not saying that you can't stand on the sidewalk and say anything you want. What we're talking about is a stationary, unattended object that someone wants to leave there and then take off. And it, obviously people have to now get around it, it moves around, you know, all those type of things. But you allow other, that's the problem. I mean, if you want to close the rights of way, I suppose, to all temporary signs, that's one thing, but you can't open them to some signs and say, but these other types of signs we don't like so much, so we're not going to allow them. Well, I don't know if this Court would change the Baldwin case so that we don't have to have the rights of way open to political signs, then that might be a step in the direction. But that's been the law of the circuit for many, many years. I take it, though, that the rights of way issue, that's now given the amendment that you, your client has enacted? I contend that is the case, especially as applied to the plaintiff's activities. Yes. And that's obviously, we got a notion that the motion was referred to the panel on that issue. In terms of the rights of way, the case law does talk about, and this is the Children of the Rosary case, that the type of access sought by the speaker defines the relevant forum. Again, we're not talking even about a sidewalk. We're talking about the rights of way is the area beyond the sidewalk that the city reserves to itself to put in street poles, utility, and eventually, if they're going to expand the street, that's the city on part. There has been no evidence in this record that the city has intentionally opened those up to public speech and debate on just any old issue. I mean, obviously, again, political speech, yes, is afforded special protection because it's required by this Court and it's been required by every court that's ever looked at a political speech case. You're saying that, and you make it sound as though the kind of speech the plaintiffs here are engaged in is entitled to some lesser First Amendment protection. Is that your argument? Well, it's not political speech, Your Honor, and it is speech on a matter of a private concern. It's noncommercial speech, though. It may be. And that's the other problem, I think, in this case. As applied to their activities with what's in this record, inviting people to a church service, that is not commercial speech. That's entitled to as much First Amendment protection as political speech, right? Well, I don't know what you say, as much as protection. It's certainly not entitled to you can't have it banned. You can't prohibit that type of speech. The question in this case is, though, does the government have to open up its own property to promote that type of speech? Again, in the Snyder case, it made a big distinction between matters of public concern and matters of private concern, and said that matters of public concern on political issues are entitled to the highest rung of First Amendment protection. I mean, that's, again, that's not the town making that up. That's the longstanding case law on First Amendment issues. Let me come back, though, because I just don't have a straight, a clear answer in my head from you. What's worse about these event signs than political signs, such that they should have greater restrictions placed on them? What's worse from the city's standpoint? How do they harm the, from a safety or aesthetics point of view, how do they harm the city more than political signs? They're not necessarily worse or better. They're, it's just a matter of enforcement, and it's a matter of limiting the overall number. So again, we're not having the rights of way just be permanent billboards to every person that ever, everyone wants to be there. I mean, the town's not excited about political signs either. But they've been told they have to have them, so they do. Again, if that law can change, it would probably be a breath of fresh air to a lot of people. But they come in and now say that every person who wants to speak on any issue that they possibly come to their mind gets to do so in the public right of way by putting up a sign and then leaving. Again, if they want to picket, if they want to handbill, if they want to talk to anybody they want to talk to, that's fine. What we're doing is talking about leaving a sign and then taking off. And obviously, the whole level of the law is that they can picket, they can do whatever    And when you say that, you're not talking about a public forum. When you do all of that, you're talking about alternative avenues for speech. Is that why you're mentioning that? Yes. Well, that's certainly on to the time, place and manner analysis. That is absolutely true. But, no, even in the forum analysis. Because in the Coquinda case, they were talking about someone set up a table and wanted to sell stuff on a sidewalk that was right outside a post office. And the court in that case said, no, the sidewalk there was not a public forum. Now, you sit there and say, well, wait a second. I've seen lots of cases where they said sidewalks are a public forum. But in that case, they said, we're talking about someone putting up a table and sitting there. No, the sidewalk, at the end of the day, is meant to get from point A to point B. And when you're talking about on a busy street, you have people walking on it, and there's cars going by at 45 miles an hour. So, yes, the city has certainly an interest in making sure that we're not just allowing this area to become, you know, just a billboard area. Let me ask you, what would happen if a city officer saw a temporary sign that arguably was covered by separate exemptions and violated one of those exemptions? For example, suppose a sign was arguably both a temporary directional sign and a political sign. How do you resolve that? I think they would go to the temporary directional event, which is where they'd say, if it's got a time and a date on it, if the event is over, the sign is taken down, if it's under the temporary directional sign ordinance. In going to your first question, Your Honor, that you asked at counsel, they alleged in their mini-complaint that's been filed in this case, it's paragraph 22, that 4402p applied to their event, to their signs. So that's been the entire framework of this case. So they're not claiming it's an ideological sign here. They certainly have never alleged that, and it's never been briefed, and that's never been the claim that they presented to the district court and what the district court based its decision on. Counsel, you have only a little bit of time left. Can I just ask, what's the rationale behind this latest amendment, that you can only have signs for stuff that's in the town? I don't understand that. Well, first of all, I think every town wants to promote its own events and its own activities and its own businesses and its own people, and they don't have a big interest in saying we want to promote people from the city of Mesa and the city of Chandler coming in and promoting events outside. That's, for example, why the residential home-builders permit exemption. It's only for residential developments in the town of Gilbert. If you're building a great, nice new houses in the city of Chandler, you don't get to in the town of Gilbert to promote that activity. Thank you. Thank you. I'll use this 38 seconds as well. Just a couple of points I wanted to make on rebuttal. First of all, the preliminary injunction decision only reviewed Section 4.402p in isolation. And the remand was to compare how does it treat qualifying event signs compared to other noncommercial signs under the Code. So it was a very narrow holding in the preliminary injunction ruling from this Court. As to your question, Your Honor, about the G.K. limited provision, I wanted to clarify that it wasn't only elections that triggered the opportunity there to put up temporary signs. There were actually several enumerated events under the Code that triggered the opportunity to put up temporary signs. So it wasn't just a few days around an election. It was a few days around house sales and various other things. And as far as the town's position that content that political signs are entitled to greater treatment than other signs, that's clearly a content-based admission. We get right to strict scrutiny, which they can't prove here. The Supreme Court said in Taxpayer's Verb of Incent that while political speech is entitled to the highest degree of protection under the Constitution, there are plenty of other forms of protected speech that are entitled to the exact same respect. Do you agree with counsel's statement that they're not entitled to ban political signs altogether? That they are not entitled to ban political signs? Altogether. I don't know that there's a state law that mandates that they allow political signs. I just don't know, Your Honor. I'm talking about as a matter of First Amendment law. I thought that's what counsel was saying. Well, I think what they could do is, as a matter of First Amendment law, could they ban all political signs? I don't think they probably could. I think. No, no. I'm saying they could just ban all signs. And obviously, that would include political signs. Counsel was suggesting that we're sort of stuck. We're caught between a rock and a hard place. We're required by First Amendment law to allow these damn political signs, which we don't particularly want. And then you guys come along and try to piggyback on that and say, me too. Well, I just didn't know if the premise of her statement was correct. Yeah. I don't think they have to. I don't think the choice is we either have to allow all signs or ban all signs. It's like I explained in my opening argument. They can regulate signs based on sign type and have different restrictions depending on whether a sign falls in a particular type. But when they make content-based distinctions among those sign types, that becomes a problem. And they don't just allow political signs here. They allow ideological signs and other noncommercial signs. And so the town has made a choice to allow not just political but other additional noncommercial signs that are temporary in nature. And they have to treat those all the same under the Constitution. Your time's basically expired. Unless any of the court has further questions, we'll submit the matter. They don't appear to. Thank you both for your argument. This matter will stand submitted. The court's going to take a short recess. Five to ten minutes. And then we'll resume with the other matters on calendar. So please, if you get up, be back here within five minutes. Thank you.
judges: Singleton, Callahan, Watford